REAL J. CHARTRAND *vs.* REGISTRAR OF MOTOR VEHICLES.

Suffolk.    December 5, 1962. — January 8, 1963.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Civil Service. Evidence,* Telephone conversation. *Mandamus. Error,*
Whether error harmful.

On the record conclusions were warranted that a discharge of a civil serv-
ice employee in accordance with the statutory procedures was not re-
scinded nor the employee reinstated and that his employment terminated
at the time of the discharge, despite certain records tending to show that
he remained an employee thereafter. [324–325]

A discharge of a civil service employee in accordance with the statutory
procedures was not invalidated by failure of the appointing authority
to notify the director of civil service of the discharge forthwith as re-
quired by G. L. c. 31, § 18. [325]

On testimony of a witness and an offer of proof showing that the witness
saw his attorney dial a telephone number, that the witness heard a voice
respond which he knew was that of a certain public official, and that the
witness heard the ensuing conversation between the attorney and the
official, it was error to exclude from evidence what was said in the con-
versation; the circumstance that neither the attorney nor the official was
called as a witness in the case went only to the weight, not the admis-
sibility, of the excluded evidence. [325]

On the issue whether a discharge of a civil service employee had been
rescinded, error in excluding from evidence a telephone conversation in
which the appointing authority stated that the discharge "was a mis-
take" and "of no effect" and that the employee should return to the
appointing authority the notice of discharge sent him and should "return
to work" was prejudicial to the employee. [322, 326]

An oral rescission by an appointing authority of a discharge of a civil
service employee, even if the rescission was conditional, would preclude
exercise by the employee of his remedies of appeal to the Civil Service
Commission and judicial review under G. L. c. 31, § 43, (b) (d), and
§ 45, so that the employee would not be barred on the ground of failure
to exhaust his statutory remedies from seeking reinstatement in his
former position by mandamus. [327]

PETITION for a writ of mandamus filed in the Supreme
Judicial Court for the county of Suffolk on May 31, 1961,
and transferred to the Superior Court.

The case was heard by *Coddaire*, J., who dismissed the petition. The petitioner alleged exceptions.

*George Michaels* for the petitioner.

*William F. Long, Jr.*, Assistant Attorney General, for the respondent.

CUTTER, J. Chartrand, a civil service employee, seeks by a petition for a writ of mandamus brought on May 31, 1961, to compel the registrar to reinstate him as examiner, and other relief. Chartrand became an examiner in the registry of motor vehicles in 1950. The registrar on January 11, 1960, sent Chartrand a letter stating certain charges, suspending him, and notifying him of a hearing on January 15, 1960, "as to whether you shall be discharged, removed, transferred, or lowered in rank." On January 15, following the hearing, Chartrand "was notified [in writing] of the [registrar's] decision . . . to discharge" him upon certain of the charges. Chartrand received the notice on January 18, 1960.

Chartrand on January 18 talked with a lawyer. He saw the lawyer dial a number on the telephone and heard "Registrar Riley's voice." Upon objection Chartrand's testimony about the conversation was excluded. Chartrand claimed an exception and made an offer of proof (1) "that he had heard the registrar's voice approximately 100 times and had heard the registrar's voice on the telephone more than half a dozen times," and (2) that he "heard him [the registrar] say that it was a mistake, that the discharge is of no effect, that he did not notify the department or the division of civil service" and that Chartrand "should return to work." Chartrand also offered to prove that the registrar in the conversation asked Chartrand to "return the notice of discharge to . . . [the] counsel for the [r]egistry . . . so that the discharge would have no effect." Later on January 18, Chartrand went to the registry and talked with his immediate supervisor. The latter had approved Chartrand's annual vacation for February, 1960. Chartrand told the supervisor "that the discharge letter was a mistake and had been rescinded." The supervisor

told Chartrand that there was "no assignment for him, and that . . . [Chartrand] could use the . . . time remaining before . . . [his] vacation . . . to start to effectuate a transfer," and that the registrar and the supervisor "would sign the transfer."

Chartrand's records and his testimony indicated that he was ill on certain days in January. February was his vacation period. Chartrand voluntarily reported to the registry every month after the vacation period in February.

The trial judge made the following findings, among others. "A personnel service requisition dated April 1, 1960, was signed by the registrar and by the director of the department of administration and finance, which . . . indicated that the department . . . desired to appoint . . . [Chartrand] to a position. The document, after the inquiry 'Department where employed,' stated 'Registry of Motor Vehicles,' and stated in answer to another question that . . . [Chartrand] was at present in the State service. On May 19 the registrar . . . wrote to the director of civil service attaching a copy of the notice of discharge sent to" Chartrand. Chartrand "did not, within five days after receiving the registrar's notice of discharge, nor thereafter, request in writing a hearing before a member of the civil service commission or some disinterested person designated by the . . . commission . . . and accordingly no hearing was granted." No proceedings for review of Chartrand's discharge were taken, other than this petition for a writ of mandamus. See G. L. c. 31, § 43 (as amended through St. 1959, c. 569, §§ 1, 2), and § 45 (as amended through St. 1955, c. 407, § 2). The trial judge found that various State records or documents tended to indicate that Chartrand remained an employee after January 15, 1960. These findings are quoted in the margin.[1] The trial judge ruled that

---

[1] "The State Employees' Group Insurance Commission report for the month ending February 29, 1960, indicated that . . . [Chartrand] was 'Off February payroll pending . . . [approval] of empl.' Their report for the following month indicated that he was 'On leave w-o from 2–13–60.' The division of personnel and standardization listed Chartrand as of June 30, 1960, as on leave of absence. Records of the State Employees' Group Insurance Commission

Chartrand "was legally discharged and his employment terminated on January 11, 1960," that his "discharge . . . was not rescinded," that he "was not reinstated," "that the facts . . . found . . . have not served to maintain . . . [Chartrand's] status as an employee of the registry . . . and that . . . he has not been such an employee since his discharge on January 15, 1960." Chartrand duly excepted to the judge's rulings and to the denial of certain requests for rulings, summarized below so far as necessary. The case is before us upon Chartrand's bill of exceptions.

1. Chartrand first contends that State records, including records executed by officials of the registry of motor vehicles, indicate that he remained an employee of the registry during 1960. The trial judge's findings (see fn. 1, *supra*) with respect to these records were warranted. We assume, without deciding, that at least the report of the division of personnel and standardization listing Chartrand as on leave as of June 30, 1960, was a public record (see G. L. c. 7, § 30, as amended through St. 1952, c. 144) admissible in evidence.

Although the State records tended to show that Chartrand was a State employee, at the registry, after January 11, 1960 (see *Barrett* v. *Brooks Hosp. Inc.* 338 Mass. 754, 757–759), the judge reasonably could have found that the statements in these records were inaccurate in the light of the direct evidence of the hearing on January 15, 1960, and of Chartrand's purported discharge on that day. Counsel for Chartrand had "stated for the record that there was no question that there was a suspension, a hearing, and a letter of discharge . . . all . . . done in accordance with statute." Similarly, the trial judge could have relied upon the

---

indicate that . . . [Chartrand] was retained on the rolls of the commission, for the purposes of coverage . . . throughout 1960. [It was stipulated by counsel that he received monthly notices to pay Blue Cross–Blue Shield and group insurance premiums through 1960.] On January 6, 1961, the registry sent . . . [Chartrand] a form for conversion of his group life insurance coverage. . . . [A] notice, dated January 6, 1961, signed by the registrar, informed the division of civil service of . . . [Chartrand's] termination of employment, stating his last date of paid employment as January 11, 1960, and his services as terminated on January 15, 1960, following hearing."

"personal service requisition" seeking Chartrand's transfer to another State agency and upon Chartrand's testimony that he reported for work at this agency, as showing the inaccuracy of documents indicating that Chartrand was an employee at the registry after April, 1960.

The delay until May 19, 1960, in notifying the director of civil service of Chartrand's discharge may have been part of a kindly intended effort to arrange Chartrand's transfer to another State position. The evidence does not definitely disclose its purpose. Failure to send notice "forthwith" to the director of civil service of Chartrand's suspension and discharge was, of course, in direct violation of the applicable statute (see G. L. c. 31, § 18, as amended through St. 1947, c. 22). We are of opinion, however, that, under the statute, the delay did not invalidate the discharge. See *Thibeault* v. *New Bedford,* 342 Mass. 552, 558. See also *Ferrante* v. *Higgiston,* 296 Mass. 208, 209. If the Legislature had intended such a consequence, a more explicit provision to that effect would probably have been made.

The trial judge did not err in denying Chartrand's requests for rulings in effect that the State records and documents in evidence required him to find that Chartrand remained an employee at the registry.

2. Despite whatever latitude may be given to a trial judge in passing upon the authentication of telephone conversations (see McCormick, Evidence, § 194), we think that the trial judge should have admitted Chartrand's testimony about his attorney's alleged telephone talk with the registrar on January 18, 1960. The preliminary questions and offer of proof established that Chartrand knew the registrar's voice adequately, that he identified the voice, and that he overheard the conversation himself. See *Bond Pharmacy, Inc.* v. *Cambridge,* 338 Mass. 488, 490–491; McCormick, Evidence, § 193; Wigmore, Evidence (3d ed.) §§ 222, 413, 660, 2155. The circumstance that neither the attorney who made the call nor the registrar was called as a witness is a matter going only to the weight of the evidence and not to its admissibility.

The telephone conversation, if believed, tended to establish an oral withdrawal of the discharge by the registrar. It would have been possible, even if such an inference was unlikely, to infer from the conversation that there was unequivocal withdrawal of the notice. If the judge had drawn this inference, his conclusions, which appear to have been based in large part upon the discharge notice, might have been different. If the registrar had treated the whole discharge proceeding as cancelled, there was evidential basis for concluding that he thereafter had prevented Chartrand from performing services, which the latter was ready and willing to perform, by failing to give him assignments. In the circumstances, on a confused record, we cannot say that failure to admit the telephone conversation was not prejudicial.

3. Because the exception to the exclusion of the telephone conversation must be sustained, we consider various questions which have been somewhat discussed in the briefs and which may arise in further proceedings.

(a) Other evidence gives little support for the view that the telephone conversation (if the testimony about it should be believed) completely nullified the discharge notice. Significant facts are (1) that Chartrand's supervisor on January 18, 1960, "had no assignment for him" and suggested that he "start to effectuate a transfer"; (2) that the registrar himself approved a "personal service requisition" (a request for transfer to another State agency, dated April 1, 1960, under G. L. c. 31, § 16A, as amended through St. 1958, c. 55), of which Chartrand himself knew and which he signed; (3) that, as Chartrand testified, on April 6, 1960, he reported for work at the other State agency; and (4) that he was requested to turn in his registry badge after he had signed the transfer requisition. This evidence would warrant the conclusion that any withdrawal of the discharge was conditional upon Chartrand's effecting a transfer to another State agency within a reasonable time.[2]

---

[2] The record gives no satisfactory account of what, if anything, Chartrand did at the agency to which he was seeking transfer. The registrar denied an allegation in Chartrand's petition that the "application [for transfer] was not approved by the director of civil service on the ground that . . . [Char-

Chartrand *v.* Registrar of Motor Vehicles.

We think that even such a conditional oral[3] withdrawal of the discharge, at least before the discharge was reported to the director of civil service (see G. L. c. 31, § 18, as amended through St. 1947, c. 22), would have deprived the discharge notice of final effect and would have made impossible, before the discharge became final, an appeal to the Civil Service Commission under G. L. c. 31, § 43 (b), as amended through St. 1948, c. 240, "within five days after receiving written notice of the decision of the appointing authority." In the absence of such an appeal to the commission, judicial review under G. L. c. 31, § 43 (d), as amended through St. 1955, c. 407, § 1, and § 45, as amended through St. 1955, c. 407, § 2, would also have been impossible. If it should be determined that there was a conditional withdrawal of the discharge notice, there thus would be basis for concluding that Chartrand was not barred from seeking seasonably relief by mandamus, merely because he had not exhausted his remedies under the statutes just cited.

(b) General Laws c. 31, § 46A, as amended through St. 1959, c. 569, § 5, requires that a petition for a writ of mandamus "for the reinstatement of any person alleged to have been illegally discharged . . . be filed . . . within six months next following such allegedly illegal discharge." See *Coyne* v. *City Manager of Cambridge,* 331 Mass. 270, 273. If this is a proper case for mandamus under § 46A (see *Henderson* v. *Mayor of Medford,* 320 Mass. 663, 667–668), it may be that it was not brought seasonably,[4] for the

---

trand] lacked sufficient knowledge of accountancy." The "personal service requisition" shows what appears to be a rubber stamp signature, "John E. Finnegan," director of personnel, under the word "Approved."

[3] Obviously, such an important matter as cancelling (either absolutely or conditionally) the discharge of a civil service employee for cause should not have been handled by telephone or orally. The applicable statutes (see G. L. c. 31, §§ 18 and 43, as amended) provide for precise, formal, written action at least in relation to other aspects of discharge. If such a matter was in fact dealt with orally, written confirmation of the oral action should have been made promptly.

[4] There was failure to invoke this remedy (still in part discretionary, see *Nichols* v. *Dacey,* 329 Mass. 598, 600) for a considerable period in a situation where applicable statutes obviously contemplate that relief from allegedly illegal official action shall be sought promptly. See *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230, 239. Cf. *Hill* v. *Mayor of Boston,* 193 Mass. 569, 574; *Sears* v. *Treasurer & Recr. Gen.* 327 Mass. 310, 326–327.

record suggests (although it does not establish) that Chartrand knew or should have known that his discharge was being treated as final and effective as early as a date shortly after the communication of the discharge notice to the director of civil service on May 19, 1960. If so, Chartrand was required to pursue any remedy he had under G. L. c. 31, § 46A, within six months thereafter. On the other hand, it may appear that Chartrand did not learn (and had no occasion to learn) that the discharge notice was being treated as final until within six months prior to filing this petition.

(c) Chartrand did no work at the registry after January 11, 1960. Certain documents in evidence indicate that he was on leave of absence without pay at least during the last ten months of 1960. As the registrar's brief suggests, any such leave of absence for over three months should have had the prior approval of the director of civil service as required by G. L. c. 31, § 46E, as amended through St. 1951, c. 37. If there was no such approval, the question will arise whether Chartrand's failure to work operated as a termination of his employment. See *Ferrante* v. *Higgiston,* 296 Mass. 208, 209–210. See also *Dunn* v. *Commissioner of Civil Serv.* 279 Mass. 504, 509–510; *McKenney* v. *Dobbratz,* 315 Mass. 39, 41; Rep. A. G., Pub. Doc. No. 12, 1960, p. 34.

(d) In any event, it will be incumbent upon Chartrand, in order to obtain relief, to establish facts showing that at the time of filing this petition he was still entitled to be treated as an employee of the registry (and that he had not been transferred to some other State agency) and that the registrar was under a clear duty to reinstate him. See *Knights* v. *Treasurer & Recr. Gen.* 236 Mass. 336, 337. Cf. *Johnson* v. *District Attorney for the No. Dist.* 342 Mass. 212, 215.

4. What has already been said sufficiently indicates that the registrar's motion to dismiss should not have been granted.

*Exceptions sustained.*